207-07/WLJ/MAM
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
NB SHIPPING LTD.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

APR 2 3 2007

William L. Juska (WJ 0772)
Manuel A. Molina (MM 1017)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
NB SHIPPING LTD.,

          Plaintiff,

    -against -

GENUINE SHIPPING CORP.,

          Defendant.
-----------------------------------------------------------x

07 CV 3237 (RMB)

**VERIFIED COMPLAINT**

    Plaintiff NB SHIPPING LTD. ("NB SHIPPING"), by and through its attorneys Freehill Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant GENUINE SHIPPING CORP. ("GSC"), alleges upon information and belief as follows:

    1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The case also falls within this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333, *et seq.* and / or the Arbitration Act, 9 U.S.C. §1 *et seq.* and /or §201 *et seq.* and this Court's federal question jurisdiction pursuant to 28 U.S.C. §1331.

    2.    At all times relevant hereto, Plaintiff NB SHIPPING was and still is a business entity organized and existing under the laws of a foreign country, with an office located at 229, Arch Makarios III Avenue, Meliza Court, 7th Floor, Limassol, Cyprus.

3. At all times relevant hereto, Defendant GSC was and still is a business entity organized under the laws of a foreign country with an office located at 80 Broad Street, County of Montserrado, Monrovia, Republic of Liberia.

4. On or about December 16, 2004, Plaintiff NB SHIPPING as owner, and Defendant GSC, as charterer, entered into a maritime contract of charter party on a New York Produce Exchange form for the use and operation of the M/V TIM BUCK ("the Charter Party").

5. The Charter Party was to be for a period of six months at a daily hire rate of $10,000. By an Addendum dated April 4, 2005, the parties agreed the Charter Party would continue for a further twelve months, with further options, and at a daily hire rate of $11,000.

6. Plaintiff NB SHIPPING duly tendered the vessel into service of GSC and has fulfilled all its obligations under the Charter Party.

**CLAIMS FOR OUTSTANDING HIRE, BUNKERS AND LOSS OF FUTURE HIRE**

7. During the course of the performance of the parties' contract several disputes arose. More specifically, Defendant GSC repeatedly failed to pay to NB SHIPPING outstanding hire, as required by the Charter Party, for GSC's use and operation of the M/V TIM BUCK.

8. Plaintiff NB SHIPPING persistently demanded payment from GSC for the outstanding hire. Despite having made due demand, however, Defendant GSC, in breach of the Charter Party with NB SHIPPING, refused otherwise failed to pay.

9. As a result of GSC's persistent and repeated failure to pay outstanding hire, which failure was a breach of the Charter Party, and following proper notice to GSC, Plaintiff NB SHIPPING, on or about November 14, 2005, withdrew the vessel from GSC's service.

10. At the time Plaintiff NB SHIPPING took early possession of the vessel, Defendant GSC owed Plaintiff the sum of $385,062.94 in outstanding hire payments and bunkers for which Defendant GSC is fully liable to NB SHIPPING.

11. In addition, as a result of Defendant's GSC's breach of the Charter Party in repeatedly failing to pay hire, which failure forced NB SHIPPING to withdraw the M/V TIM BUCK from GSC's service, NB SHIPPING sustained damages with respect to hire that it was entitled to earn over the remainder of the Charter Party. The damages sustained by NB SHIPPING in lost hire for the balance of the Charter Party, following NB SHIPPING's mitigation of damages in finding a substitute charterer and other offsets, total the net sum of $1,502,192, for which GSC is liable to NB SHIPPING.

### INDEMNITY FOR THE AMMONIUM NITRATE CLAIM, WHICH CLAIM HAS BEEN SETTLED AND PAID BY PLAINTIFF

12. In July 2005, Defendant GSC ordered the M/V TIM BUCK to load two cargoes of urea and ammonium nitrate at Adabiya Port, Suez. Both shipments were destined for the Port Sudan, as the discharge port.

13. At Port Sudan, the cargoes of urea and ammonium nitrate were found to be contaminated.

14. Pursuant to Clauses 8, 18 and 44 of the Charter Party, Defendant GSC must indemnify Plaintiff NB SHIPPING for any liability, loss and expense incurred by Plaintiff stemming from damage to cargoes.

15. As a result of the contamination and concomitant damages suffered by the shipments of ammonium nitrate and urea, the respective cargo receivers arrested the M/V TIM BUCK and filed lawsuits in Sudanese Courts against Plaintiff NB SHIPPING.

16. To effect the vessel's release, Plaintiff NB SHIPPING was forced to post security.

17. In addition, Plaintiff NB SHIPPING, on or about February 20, 2007, paid the sum of $75,000.00 to settle the claim from the receivers of the ammonium nitrate shipment. Accordingly, Defendant GSC is liable to Plaintiff NB SHIPPING in the sum of $75,000.

## INDEMNITY FOR THE UREA CARGO CLAIM

18. Plaintiff NB SHIPPING repeats and realleges each and every allegation contained in paragraphs 1 through 17 of the within Verified Complaint as though fully set forth herein.

19. The receivers of the urea shipment at issue, who are currently suing Plaintiff in Sudanese Courts, have forced Plaintiff NB SHIPPING to post security in the amount of $627,288.25.

20. Despite due demand by Plaintiff NB SHIPPING, Defendant GSC, in breach of the Charter Party, has refused to settle and pay the claim of the urea cargo receivers.

21. Defendant GSC's breach of the Charter Party has cast Plaintiff NB SHIPPING into potential liability vis-à-vis the urea cargo receivers, which liability is presently estimated to be $627,288.25.

## RULE B MARITIME ATTACHMENT

22. The Charter Party provides that it is to be governed by English law and all disputes between the parties are to be resolved by arbitration in London. Plaintiff NB SHIPPING has commenced arbitration proceedings in London against GSC and expressly reserves herein its right to arbitrate the merits of its claims against GSC in accordance with the agreement of the parties.

23. This action is brought to obtain jurisdiction over the Defendant GSC and to obtain security in favor of Plaintiff NB SHIPPING in respect to its claims against GSC and in aid of London arbitration proceedings.

24. This action is further brought to obtain security for any additional sums to cover Plaintiff NB SHIPPING's anticipated costs in the arbitration and interest, all of which are recoverable under English law and the rules as applicable to London Arbitration.

25. Upon information and belief, and after investigation, Defendant GSC cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, credits, debts, wire transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant GSC at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

26. As nearly as presently can be computed, the total amount sought by Plaintiff NB SHIPPING to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims against Defendant GSC include:

(a) Claim for outstanding hire and bunkers in the sum of $385,062.94;

(b) Interest on the above claim in the sum of $76,299.08, calculated at the rate of 7.5%, compounded quarterly from November 14, 2005 (date of breach) to April 20, 2008, the estimated date for the issuance of the final arbitration award;

(c) Claim for future hire lost in the sum of $1,502,192.00;

(d) Interest on the above claim in the sum of $252,074.67, calculated at the rate of 7.5%, compounded quarterly from March 6, 2006 to April 20, 2008, the estimated date for the issuance of the final arbitration award;

(e) Indemnity for the payment of the ammonium nitrate claim in the sum of $75,000.00;

(f) Interest on the above claim in the sum of $6,778.00, calculated at the rate of 7.5%, compounded quarterly from February 20, 2007 (date Plaintiff paid the claim to cargo receivers) to April 20, 2008, the estimated date for the issuance of the final arbitration award;

(g) Indemnity for the urea cargo claim being presently litigated in Sudanese Court and for which Plaintiff has posted security in the amount of $627,288.25;

(h) Interest on the above claim in the sum of $126,900.9, calculated at the rate of 7.5%, compounded quarterly from October 28, 2006 (date security was provided) to April 20, 2008, the estimated date for the issuance of the final arbitration award;

(i) Attorneys' fees and costs to be incurred in London arbitration, which English solicitors estimate to be $200,272.70 (at the exchange rate of 1GBP = 2.00273USD).

27. Based upon the foregoing, Plaintiff NB SHIPPING therefore seeks to attach the total sum of **$3,251,868.54** in this action.

WHEREFORE, Plaintiff NB SHIPPING LTD. prays:

A. That process in due form of law according to the practice of this Court may issue against Defendant GENUINE SHIPPING CORP., citing it to appear and answer the foregoing, failing which a default will be taken against it for the principal amount of the claims of $2,589,543.19 plus interest, costs and attorney fees;

B. That if Defendant GENUINE SHIPPING CORP. cannot be found within the District pursuant to Supplemental Rule B, that all tangible and intangible property of Defendant, up to and including the claim of **$3,251,868.54** be restrained and attached, including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, debts, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of,

belonging to, due or for the benefit of Defendant (collectively "ASSETS"), including but not limited to such "ASSETS" as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein served;

C.  That this Court retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary; and

D.  That Plaintiff have such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
       April 23, 2007

>                FREEHILL HOGAN & MAHAR, LLP
>                Attorneys for Plaintiff
>                NB SHIPPING LTD.
>
> By:            _____
>                William L. Juska, (WJ 0772)
>                Manuel A. Molina (MM 1017)
>                80 Pine Street
>                New York, NY  10005
>                (212) 425-1900
>                (212) 425-1901 fax

## ATTORNEY VERIFICATION

State of New York     )
                      ) ss.:
County of New York    )

WILLIAM L. JUSKA, being duly sworn, deposes and says as follows:

1. I am an attorney with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action. I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications from our clients and documents provided by our clients regarding the claim.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
William L. Juska

Sworn to before me this
23rd day of April, 2007

_____
Notary Public

CLARE HENRY
Notary Public, State of New York
No. 01HE4831498
Qualified in Kings County
Certificate in New York County
Commission Expires October 31, 2009